J-S74045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: C.A.Y., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.Y., FATHER | No. 1789 EDA 2014 |

Appeal from the Decree and Order entered May 20, 2014,
in the Court of Common Pleas of Philadelphia County, Juvenile
Division, at No(s): CP-51-AP-0000691-2013, CP-51-DP-0000656-2012,
FID No. 51-FN-001207-2012

BEFORE:    BENDER, P.J.E., DONOHUE, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:        **FILED JANUARY 02, 2015**

R.Y. (Father) appeals from the decree entered May 20, 2014, in the Court of Common Pleas of Philadelphia County, which terminated involuntarily Father's parental rights to his minor daughter, C.A.Y. (Child), born in February of 2012. Father also appeals from an order entered that same day, which changed Child's permanency goal to adoption. We affirm.

The trial court summarized the relevant factual and procedural history of this case as follows.

> On February 6, 2012, the Department of Human Services (DHS) received a General Protective Services (GPS) report due to [M]other testing positive for Oxycontin, cocaine and opiates while giving birth to [Child]. The report also alleged that [Child] was administered morphine to counter her Oxycontin withdrawal symptoms. The report was substantiated.
>
> At birth, [Child] was diagnosed as suffering from low birth weight and prescribed a diet to gain weight. [Child] remained hospitalized until February 22, 2012. Upon discharge, [Child]

---

* Retired Senior Judge assigned to Superior Court.

was released to [M]other, who was enrolled in an intensive outpatient dual diagnosis treatment program.

On February 22, 2014, In-home Protective Service (IHIP) through DHS Northeast Treatment Center (NET) was implemented in the home of [Child's] paternal grandmother. The [F]ather of the [C]hild resided in the paternal grandmother's home.

On March 16, 2012, the IHIP's social worker visited the home of the paternal grandmother. The IHIP worker found the home smelled of marijuana and observed fresh ashes in an ashtray. The [F]ather admitted to the IHIP's social worker that he had been using synthetic marijuana.

In March 2012, [M]other and [Child] began residing with [Child's] maternal grandmother. As of April 13, 2013, [M]other and [Child] were again residing in paternal grandmother['s] home with [F]ather.

On April 18, 2012, DHS filed an urgent petition on behalf of [Child].

An adjudicatory hearing was held on May 1, 2012, before the Honorable Jonathan Irvine. Judge Irvine adjudicated … [Child] dependent and awarded temporary legal custody to the maternal grandparents [(Grandparents)]. The [trial c]ourt specifically ordered [M]other and [F]ather of [Child] to the Clinical Evaluation Unit (CEU) for forthwith drug screens, dual diagnosis and monitoring. The [C]hild … was placed in care of family members. Mother and [F]ather were present at the hearing.

Father tested positive for cocaine and benzodiazepines on May 1, 2012. On May 9, 2012, [F]ather was evaluated at the CEU and again tested positive for cocaine. The [F]ather reported to the CEU that he had an extensive history of drug abuse. The drug abuse history is as follows: (1) seven years of cocaine abuse, (2) ten years of Valium and Xanax abuse, (3) a five year period of PCP abuse, (4) one year of heroin abuse (5) consistent marijuana abuse and (6) a six year period of Percocet abuse.

Mother died of a drug overdose on June 30, 2012. [Grandparents] requested kinship care subsequent to [M]other's death.

In July 2012, DHS temporarily suspended [F]ather's visitation with [Child] due to his erratic behavior, inappropriate late night contact with [Child's] caregivers and his failure to enroll in a dual diagnosis treatment program.

A permanency review hearing was held on August 2, 2012. The Honorable Jonathan Irvine vacated temporary legal custody and ordered [Grandparents] be referred for kinship assistance. A protective order was issued preventing [F]ather from contacting [Grandparents]. The [trial c]ourt incorporated [F]ather's CEU report of non-compliance, which indicated positive screens for cocaine and benzodiazepines on 5/1/12 and 5/9/12. Additionally, the CEU reported that [F]ather was not compliant with the recommended intensive outpatient drug treatment.

A Family Service Plan meeting was held by the Department of Human Services. The Family Service Plan objectives for [F]ather were (1) to maintain sobriety by attending drug treatment and complying with all recommendation[s], including CEU assessments, monitoring and random drug screens (2) to complete job training and/or maintain employment, (3) attend parenting classes.

Trial Court Opinion, 7/18/2014, at 1-3 (unnumbered pages).

On December 4, 2013, DHS filed a petition to terminate Father's parental rights to Child involuntarily, as well as a petition for goal change to adoption. A termination and goal change hearing was held on May 20, 2014. Following the hearing, the trial court entered a decree terminating Father's parental rights. The court also entered a permanency review order changing Child's goal to adoption. Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[1]

---

[1] Father's notice of appeal indicated that he was appealing both from the decree terminating his parental rights, as well as the order changing Child's permanency goal to adoption. We observe that it was improper for Father to

Father now raises the following issues for our review.

1. Whether the [t]rial [court] erred and/or abused its discretion as a matter of law in granting the petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. [§] 2511(a)[?]

2. Whether the [t]rial [c]ourt erred or abused its discretion as a matter of law by terminating Father's parental rights under 2511(b) of the Adoption Act[?]

3. Whether the [t]rial [c]ourt erred or abused its discretion by changing the goal from reunification to adoption[?]

4. Whether the [t]rial [c]ourt erred by failing to make a determination as to the credibility of Father's testimony[?]

Father's Brief at 3.

In his first two issues, Father argues that the trial court abused its discretion by terminating his parental rights pursuant to 23 Pa.C.S. § 2511(a) and (b).

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have

file a single notice of appeal as to both the termination decree and the goal change order. *See* Pa.R.A.P. 341, Note ("Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."). However, we decline to quash Father's appeal. It is likely that, had Father correctly filed two notices of appeal, this Court would have consolidated both cases, and we discern no prejudice stemming from Father's procedural misstep.

previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our courts apply a two-part analysis in reviewing an order terminating parental rights. As we explained in *In re L.M.*, 923 A.2d 505 (Pa. Super. 2007),

> [i]nitially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* at 511 (citations omitted).

Here, the trial court terminated Father's rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). "This [C]ourt may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a)." *In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013) (citing *In re B.L.W.,* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied,* 863 A.2d 1141 (Pa. 2004)). For the

purposes of our analysis, we focus on Section 2511(a)(8). The statute

provides, in relevant part, as follows.

> **(a) General rule**.--The rights of a parent in regard to a child
> may be terminated after a petition filed on any of the following
> grounds:
>
> * * *
>
> (8) The child has been removed from the care of the
> parent by the court or under a voluntary agreement with
> an agency, 12 months or more have elapsed from the date
> of removal or placement, the conditions which led to the
> removal or placement of the child continue to exist and
> termination of parental rights would best serve the needs
> and welfare of the child.
>
> * * *
>
> **(b) Other considerations**.--The court in terminating the rights
> of a parent shall give primary consideration to the
> developmental, physical and emotional needs and welfare of the
> child. The rights of a parent shall not be terminated solely on
> the basis of environmental factors such as inadequate housing,
> furnishings, income, clothing and medical care if found to be
> beyond the control of the parent. With respect to any petition
> filed pursuant to subsection (a) … (8), the court shall not
> consider any efforts by the parent to remedy the conditions
> described therein which are first initiated subsequent to the
> giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

> To terminate parental rights pursuant to 23 Pa.C.S.A.
> § 2511(a)(8), the following factors must be demonstrated: (1)
> the child has been removed from parental care for 12 months or
> more from the date of removal; (2) the conditions which led to
> the removal or placement of the child continue to exist; and (3)
> termination of parental rights would best serve the needs and
> welfare of the child. Section 2511(a)(8) sets a 12–month time
> frame for a parent to remedy the conditions that led to the
> [child's] removal by the court. Once the 12–month period has
> been established, the court must next determine whether the

conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of [the child welfare agency] supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of [the child welfare agency's] services.

*In re D.A.T.*, 91 A.3d 197, 204-05 (Pa. Super. 2014), *appeal denied*, 95 A.3d 278 (Pa. 2014) (quoting *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008)).

Instantly, the trial court concluded that Father's parental rights should be terminated, and emphasized Father's failure to remedy his history of drug abuse. Trial Court Opinion, 7/18/2014, at 4-5 (unnumbered pages). Father argues that the court abused its discretion in light of, *inter alia*, the efforts he made to meet his FSP objectives. Father asserts that he completed a parenting class, gained employment, visited with Child, and made diligent efforts to overcome his drug addiction. Father's Brief at 12-15, 17-19.

We conclude that the record supports the trial court's decision. During Father's goal change and termination hearing, DHS social worker Catherine Poczkowski testified that Child was adjudicated dependent after DHS received "safety alerts" concerning Father's parenting and suspected drug use. N.T., 5/20/2014, at 27.[2] Ms. Poczkowski explained that she had

---

[2] In his brief, Father claims that Child was not removed from his care, but that "[t]he facts demonstrate that the [C]hild was initially removed from her Mother's care." *Id.* This assertion is contradicted by Ms. Poczkowski's testimony, *supra*, as well as the order adjudicating Child dependent, which adopted the factual allegations contained in the DHS dependency petition.

stressed to Father the importance of obtaining drug and alcohol treatment, and that this was "the main issue of the case." *Id.* at 28-29, 39-40. However, Ms. Poczkowski indicated that Father did not take his drug problem seriously. *Id.* at 29, 43. For example, she testified that, following a Family Services Plan meeting on April 30, 2013, Father did not "talk about being serious about a treatment program" and made excuses for his positive drug screens. *Id.* at 29-30. Ms. Poczkowski agreed that Father would "still have to do intensive outpatient to completion, and outpatient to completion, and lack of relapse before DHS would feel that there had been significant progress concerning his chronic drug additions[.]" *Id.* at 62.

Father's failure to remedy his drug problem also was established by Clinical Evaluation Unit (CEU) reports, which are contained in the certified record on appeal, and which were presented by DHS during the termination and goal change hearing. *See* N.T., 5/20/2014, at 8-12. The reports reveal that Father underwent a drug and alcohol evaluation on May 9, 2012. DHS Exhibit 3, at 1. As a result of this evaluation, it was recommended that Father take part in an intensive outpatient dual diagnosis treatment program. *Id.* at 4. At first, Father engaged in treatment inconsistently. DHS Exhibit 4, at 1-4. By December of 2013, Father was maintaining good

Order of Adjudication and Disposition, 5/1/2012, at 1. The dependency petition reveals that, at the time the petition was filed, Child was residing with Father and Mother in the home of her paternal grandmother. Dependency Petition, 4/18/2012, Statement of Facts at 1-2. Child was adjudicated dependent as a result of allegations that Father was using drugs, and that Child was being left alone in his care. *Id.* at 1-2.

attendance and participating in treatment.  *Id.* at 5.  However, Father had "regressed to active addiction," as evidenced by a positive drug test for cocaine on September 18, 2013, and positive tests for opiates on November 26, 2013, December 2, 2013, and December 12, 2013.  *Id.*  Father "was asked to develop a relapse prevention plan and was offered a higher level of care to which he refused."  *Id.*  Father's final positive drug tests took place on December 20, 2013, when he tested positive for cocaine and opiates, and on January 28 2014, when he tested positive for alcohol.  DHS Exhibit 4 at 6; DHS Exhibit 5 at 1-2.  Father began to attend a different treatment program in February of 2014.  DHS Exhibit 4 at 6.  As of May of 2014, his attendance was "sporadic."  *Id.*

Accordingly, the record confirms that Child has been out of Father's care for a period in excess of 12 months, and that the conditions which led to Child's placement continue to exist, as Father has failed to remedy his drug abuse problem.  While Father testified that he was now making strides with regard to overcoming his drug issues, he acknowledged that he had only stopped using opiates since "the beginning of the year," which Father stated was the longest he had gone without a relapse for most of his life.  *Id.* at 139-41.  Because Father's most recent effort at conquering his drug addiction took place after DHS filed the petition to terminate his parental rights, the trial court was not permitted to consider it.  *See* 23 Pa.C.S. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1),

(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.").

Additionally, the record supports the other requirement under Section 2511(a)(8), regarding the needs and welfare of Child. While Father claimed to have made progress with regard to his drug problem, he admitted that he did not know how much drug treatment he would need, and that he would be "battling this disease the rest of my life." *Id.* at 170, 173. It is unclear when, if ever, Father will be able to care for Child. Conversely, Child is bonded with Grandparents, who already care for her and provide for her needs. Ms. Poczkowski testified that Child has lived with Grandparents for the last 21 months. N.T., 5/20/2014, at 45. Child and Grandparents have developed a "[v]ery strong" bond, and Child treats Grandparents "as if they were her parents." *Id.* at 49. Child appears happy with Grandparents, and looks to them for affection. *Id.* Similarly, Grandparents "love and adore" Child. *Id.* Ms. Poczkowski opined that it would be in Child's best interest to be adopted, and that it would cause Child "serious harm" to be removed from Grandparents. *Id.* Ms. Poczkowski's testimony was confirmed by foster care case manager Ivy Lloyd, who agreed that Child is bonded with Grandparents, and that Child would suffer irreparable harm if she were taken from them. *Id.* at 117, 119-20, 122. We therefore conclude that the

trial court did not abuse its discretion in finding that DHS met its burden under section 2511(a)(8).

We next consider whether the trial court abused its discretion by terminating Father's parental rights under Section 2511(b).

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (some citations omitted).

Here, the trial court concluded that termination would be in Child's best interests because Child is in a stable environment with Grandparents, and because Child is bonded to Grandparents. Trial Court Opinion, 7/18/2014, at 4-5 (unnumbered pages). The court also determined that "[Child] has not had an opportunity to bond with [F]ather due to [F]ather's consistent drug abuse," and that Child would not suffer irreparable harm if Father's rights were terminated. *Id.* at 5. Father argues that the trial court abused its discretion because, *inter alia*, Child is bonded to Father. Father's Brief at 20-22. He also complains that a bonding evaluation should have

been conducted because "[t]he DHS worker and Agency worker witnessed less than three percent of the interactions between [Father] and his [C]hild. That is not enough of an observation to make a well[-]reasoned decision about the bond between [Father] and Child in this case." *Id.* at 21.

We conclude that the trial court did not abuse its discretion by terminating the parental rights of Father pursuant to Section 2511(b). As noted, *supra*, Child is bonded with Grandparents. Further, Ms. Poczkowski testified that there was no parent/child bond between Father and Child. *Id.* at 57. She noted that Father's interaction with Child "is somewhat guided" by Child's extended family, and explained, "for example, [Father's mother] would be like, [Child], go take a picture with your father. [Child], there's your DaDa. There's Daddy. It seems to be forced by outside individuals and not by the child, herself." *Id.* at 58, 91-92. She also noted that Child did not seem excited to see Father following a period of six weeks during which he was unable to visit, reportedly due to his conflicting employment schedule. *Id.* at 59. Ms. Lloyd agreed that Father's interaction with Child was poor and that "Father needs to be redirect[ed] by usually the person accompanying him to the visit to interact with [Child], more so." *Id.* at 115-17, 121. Both Ms. Poczkowski and Ms. Lloyd stated that Child would not suffer irreparable harm if the bond with Father were severed. *Id.* at 63, 122.

Father and his mother testified that Father and Child are bonded, and that Father does not require redirection during visits. *Id.* at 150, 152, 155-57, 180-82. However, the trial court was free to reject this testimony, and to credit the statements and opinions of Ms. Poczkowski and Ms. Lloyd. Additionally, we observe that "[t]his Court has held that the trial court is not required by statute or precedent to order that a formal bonding evaluation be performed by an expert." *In re B.C.*, 36 A.3d 601, 611 (Pa. Super. 2012) (quoting *In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010)). Ms. Poczkowski and Ms. Lloyd witnessed a combined 9 or 10 visits between Father and Child. N.T., 5/20/2014, at 55, 89, 123. It was for the court to determine whether this was sufficient to reach an opinion concerning their parent/child bond, or lack thereof. No relief is due.

Father's third claim is that the trial court abused its discretion by changing Child's permanency goal from reunification to adoption. Father's Brief at 22-23. We consider this issue mindful of the following.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the

- 13 -

extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

With respect to this issue, Father contends that it was not in the best interests of Child to change her permanency goal to adoption. Father's Brief at 23. Father argues that he was attempting to reunify himself with Child, and that the court "should have afforded [Father] the opportunity to reunify with his daughter given the fact that she had tragically lost her Mother two years earlier." *Id.* Father also asserts, *inter alia*, that Child spends the majority of her time in daycare, that Grandparents "are older" and will be "of advanced age" during Child's teen years, and that Child "will ultimately question her background and become curious as to where her natural Father is." *Id.*

We again conclude that the trial court did not abuse its discretion. As discussed *supra*, Father had ample opportunity to complete drug treatment over the course of 21 months, but he failed to do so. Further, Child presently resides with Grandparents, who have provided for Child, and with

- 14 -

whom Child is bonded. Grandparents are in their "[l]ate 50's" and in "[g]ood" health, and there is no reason to conclude that they are too old or will be incapable of caring for Child. *See* N.T., 5/20/2014, at 107. While both Grandparents work outside the homeand Child spends time in daycare as a result, it was reasonable for the court to conclude that it would be in Child's best interest to be adopted. To conclude otherwise would result in Child's life continuing to be put on hold in favor Father, whose ability to overcome his drug addiction and care for Child remains speculative. Father is not entitled to relief.

Father's final claim is that "the trial court erred by failing to make a determination as to the credibility of Father's testimony." Father's Brief at 24. Father argues that the trial court failed to make a "specific determination" of Father's credibility as a witness and that, as a result, "it is impossible for the Appellate Court to determine whether findings of the [t]rial [c]ourt [are] supported by competent evidence." *Id.* We disagree.

Tellingly, Father cites no authority for the proposition that a trial court must make written findings of credibility as to each witness in order for this Court to review a case. Moreover, to the extent the trial court's decree and opinion contradict portions of Father's testimony, it is clear that the court implicitly rejected that testimony. We see no basis on which to conclude that the trial court abused its discretion.

Accordingly, because we conclude that none of Father's claims entitles him to relief, we affirm the decree and the order of the trial court.

Decree and Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/2/2015